IN THE UNITED STATES DISTRICT COURT
FORTHE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA PUENTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 25 cv 00943 |
| v. | ) | |
| | ) | Honorable Thomas M. Durkin |
| CITY OF CHICAGO, et al., | ) | |
| | ) | Magistrate Judge Keri L. Holleb Hotaling |
| Defendants. | ) | |

**CITY OF CHICAGO'S RULE 12(b)(6) MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant City of Chicago (hereinafter "the City"), through its attorney, the Office of the Corporation Counsel, respectfully requests that this Honorable Court dismiss Plaintiff's Amended Complaint in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this Motion, the City states as follows:

## INTRODUCTION

Christina Puente, ("Plaintiff"), filed her First Amended Complaint on June 11, 2025, alleging that the City subjected Plaintiff to sexual harassment, discriminated against her based on her sex, and retaliated against her for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e ("Title VII") and the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.*) ("IHRA"). ECF Dkt. No. 36, "Amended Complaint." Plaintiff brings claims against Defendant Favorite Healthcare Staffing, LLC ("Favorite"), as well. *Id.*

Plaintiff's Complaint must be dismissed in its entirety against the City because she failed to plausibly allege a joint employer relationship with the City, when she was employed by Favorite. All of Plaintiff's Title VII and IHRA claims must be dismissed against the City because the City cannot be held liable to Plaintiff as it was not her employer. Plaintiff's sexual harassment claim also fails because she did not exhaust her administrative remedies for a sexual harassment claim and the conduct she alleges is not

1

"severe or pervasive." Additionally, Plaintiff's sex-based discrimination and retaliation claims fail because she did not allege discriminatory animus or knowledge of protected activity by any decision-maker as it relates to any materially adverse employment action. Lastly, Plaintiff's request for punitive damages against the City must be stricken, as such damages are not recoverable against a municipality.

## LEGAL STANDARD

To survive a Federal Rules of Civil Procedure Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic* v. *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering motions pursuant to Rule 12(b)(6), all well-pleaded allegations within the complaint are read in the light most favorable to the plaintiff and presumed true. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). This presumption is not extended to "legal conclusions, or threadbare recitals of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

## FACTUAL BACKGROUND[1]

Plaintiff's Amended Complaint alleges that she was hired by Favorite as a "direct employee" and subsequently assigned within the City's Department of Family Support and Services ("DFSS" or the "City") "to perform work on its behalf" pursuant to a staffing arrangement between Favorite and the City.[2] Am. Compl. at ¶¶ 17, 20. She further cursorily alleges that the City and Favorite have

---

[1] The following facts are taken from plaintiff's complaint and presumed true for purposes of this motion. *Smith v. City of Chicago*, 3 F.4th 332, 334 (7th Cir. 2021).

[2] Defendant has incorporated by reference the staffing agreement between Favorite Healthcare Staffing, Inc. and the City in its entirety as Exhibit A. "A court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994). *See also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[I]f a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting the defendant's 12(b)(6) motion to a motion for summary judgment.").

"continuously been a joint employer." *Id.* at ¶14. Plaintiff was hired in November 2022 "in security," with the option to renew her contract monthly. *Id.* at ¶¶15, 25. In February 2023, Plaintiff did not renew her employment contract and instead went home. *Id.* at ¶26. Plaintiff did not work for Defendants again until May 2023, when she returned as a case officer. *Id.* at ¶26. During this time, Plaintiff was a "Site Captain" with migrant children as a liaison with the City. *Id.* at ¶27. Plaintiff alleges that she reported to Favorite and the City. *Id.* at ¶29.

At some point, while she was a case officer, staff reported to Plaintiff that a shelter manager named Mr. Garza, was having sexual relations with an asylum seeker, and around July 1, 2023, an investigation was conducted, which verified the claim. *Id.* at ¶¶36-37. Plaintiff wrote an incident report and Mr. Garza was terminated. *Id.* at ¶38. Following Mr. Garza's termination, from July 2023 through Plaintiff's termination on October 26, 2023, Defendant, [*Plaintiff did not specify which one*], subjected Plaintiff to different terms and conditions of employment different than others who were not of her sex, [female], and subjected her to a hostile work environment, and other Site Captains were upset with Plaintiff because they were friends with Mr. Garza. *Id.* at ¶¶35-41. Around July 22, 2023, Plaintiff was promoted to Site Captain and claims that she subsequently was retaliated against when other Site Captains isolated her by failing to train her, leaving her out of meetings, and generally refusing to help her. *Id.* at ¶43-44. Plaintiff alleges that Site Captains Arturo Chavez (male), Jose Robles (male), as well as a third unnamed female Site Captain commented that she "slept her way to the top." *Id.* at ¶46-48. Plaintiff reported this comment to the on-site management named Cherise. *Id.* at ¶¶50. Plaintiff emailed Human Resources about the incidents she believed to be retaliation on August 2, 2023, and Cherise sent a follow up email to Human Resources on August 23, 2023. *Id.* at ¶¶50-53. Plaintiff was not aware of any investigation related to her complaints. *Id.* at ¶54.

Plaintiff was terminated on October 26, 2023 following a complaint by a female shelter manager Andrea Saenz, [*who was friends with Arturo Chavez*] who claimed Plaintiff was difficult to work

3

with. *Id.* at ¶55-56. Plaintiff believes her termination as due to her sex, female, because she had no other disciplinary actions or warnings outside of Saenz's complaint. *Id.* at ¶57. Plaintiff alleges she was also terminated by Favorite based on her sex, because she has not been placed for a new assignment since. *Id.* at ¶58. Plaintiff alleges that she was retaliated against and targeted for termination based on her sex and reporting of illegal activity, and that she suffered "multiple" adverse actions and sexual harassment. *Id.* at ¶¶61-64.

Plaintiff filed a charge of discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") on February 27, 2024, alleging harassment and discrimination based on sex, and retaliation. Plaintiff received her right to sue letters on January 5 and 16, 2025. *See generally* Am. Compl., Exh. A-D.

## **ARGUMENT**

Plaintiff's Complaint should be dismissed in its entirety because she has failed to sufficiently plead a claim for sexual harassment, retaliation, or sex discrimination under Title VII and the IHRA against the City because the City is not her employer. Even so, Plaintiff's sexual harassment claim fails because she did not exhaust her administrative remedies as to a claim for sexual harassment; nor did she sufficiently plead conduct "severe or pervasive" enough to create a hostile work environment. Plaintiff's sex-based discrimination claim fails because she did not sufficiently allege she was subjected to a materially adverse employment action based on her sex. Further, the only allegation related discriminatory animus is precisely the type of "stray comment" that courts in this Circuit have found to be non-actionable. Plaintiff's retaliation claim also fails because she did not allege any decision-maker had any knowledge of her alleged protected activity in order to retaliate against her by "terminating her." Lastly, Plaintiff's request for punitive damages should also be stricken because the City cannot be held liable for punitive damages by law. For the reasons set forth below, the City's motion should be granted.

4

I. **Plaintiff's Title VII and IHRA claims against the City fail because she was an independent contractor and the City is not her employer.**

Plaintiff's Title VII and IHRA claims should be dismissed with prejudice because the City was not Plaintiff's employer. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701–02 (7th Cir. 2015).[3] One must be an employee to bring a Title VII suit against their employer. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701-02 (7th Cir. 2015). As a threshold matter, the agreement between Favorite and the City clearly precludes the establishment of an employer-employee relationship between Plaintiff and the City by providing, in relevant part:

> any and all personnel provided by Contractor under this Contract are employees or subcontractors of Contractor, not employees of the City of Chicago. This Contract is not intended to and does not constitute, create, give rise to or otherwise recognize an employer-employee relationship of any kind between the City and any personnel provided by Contractor.

*See* Ex. A, p. 30 § 1.3.10.3 (B) "City Hiring Plan Prohibitions." A plain reading of this provision makes clear that the City and Favorite never intended for any personnel provided pursuant to the staffing agreement to be considered joint employees of both entities. As such, her claim should fail as a matter of law on this basis alone.

This contractual provision notwithstanding, when a plaintiff alleges that more than one entity was involved in an employment relationship, the Seventh Circuit applies the factors from *Knight v. United Farm Bureau Mut. Ins.*, 950 F.2d 377, 378–79 (7th Cir. 1991). Under the *Knight* test applied to the working relationship to determine if an employee falls under Title VII application, the following non-exclusive factors are considered:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the

---

[3] Illinois courts apply the federal Title VII framework to claims brought under the IHRA to determine whether joint-employer liability exists. *Volling v. Kurtz Paramedic Servs.*, Inc., 840 F.3d 378, 383 (7th Cir. 2016).

> costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Id.*. Additional factors include: "(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision;" (2) "the length of time during which the individual has worked;" and (3) "the method of payment, whether by time or by the job.'" *Wells v. Freeman Co.,* 94 F.4th 608, 614 (7th Cir. 2024), *reh'g denied*, No. 23-1320, 2024 WL 1197929 (7th Cir. Mar. 20, 2024) (citing *Kight,* 950 F.2d at 378-79). Regardless, this Circuit's Appellate Court recently affirmed, "[U]nder any version of the test, the most important question is whether the putative employer exercised sufficient control over the plaintiff." *Id.* (citing *Harris v. Allen Cnty. Bd. of Comm'rs*, 890 F.3d 680, 683 (7th Cir. 2018).

Courts routinely dismiss claims premised on joint employer liability where plaintiffs fail to adequately allege the *Knight* factors. *Turner v. City of Chicago Bd. of Educ.*, No. 17 C 6507, 2018 WL 3218706, at *4 (N.D. Ill. July 2, 2018). The plaintiffs in *Turner* were employees of Chicago Public School ("CPS") and sued the Chicago Board of Education, which CPS is a part of, after each received a "Do Not Hire" notice in their CPS files after the CPS Office of the Inspector General's Office completed its report on attendance reporting, accusing each of the plaintiffs as fraudulent reporters. *Id.* at *1-2. The Court dismissed the claims and Title VII counts against the Board because plaintiffs in *Turner* failed to allege facts to establish the Board was their joint employer both by the *Knight* factors or based on economic realities when the plaintiffs simply alleged they were required to follow the Boards rules and regulations. *Id.* at *4.

Similarly here, Plaintiff does not allege requisite facts to suggest the City was a joint employer with Favorite. When considering the *Knight* factors, even where one or few may be inconclusive, but overall weigh towards an individual being an independent contractor over an employee, a Title VII

claim fails as a matter of law. *See Wells v. Freeman Co.*, 94 F.4th 608, 615–17 (7th Cir. 2024), *reh'g denied*, No. 23-1320, 2024 WL 1197929 (7th Cir. Mar. 20, 2024).

Here, Plaintiff summarily alleges that she was employed by Defendants and was hired by Defendant Favorite around November 2022. Compl. at ¶15-17. Plaintiff also concludes that the Defendants "controlled the terms and conditions" of her employment. *Id.* at ¶14. These allegations are insufficient to establish the first *Knight* factor concerning joint employment. *See Turner, supra.* Such conclusory allegations that mimic the elements of the claim are not sufficient to plead a right to relief. *Alam.*, 709 F.3d at 666. Plaintiff likewise alleges that the City "jointly and independently exercised substantial control" over her day-to-day work, along with Favorite, and that she was subject to the City's "rules, policies, and procedures." Am. Compl. ¶¶17-19, 22. She further claims that a DFSS employee's act of signing her timesheet demonstrates that the City "exercised control over her ability to be compensated." *Id.* at ¶17. However, these allegations amount to nothing more than blanket assertions unsupported by specific factual allegations. Further, Plaintiff's complaint does not indicate how either Defendant assigned her duties and responsibilities or what those duties and responsibilities were, nor does she provide any allegations related to her compensation or the provision of fringe benefits throughout the Amended Complaint. As the Seventh Circuit has made clear, "[l]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to the presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)). Applying this to the first *Knight* factor weighs more in favor of independent contractor, and not that the City was a joint employer to Plaintiff.

The next two *Knight* factors also weigh more towards Plaintiff being an independent contractor with the City. Plaintiff's Complaint is void of any allegations regarding any specific skills, education, or responsibilities of the job related to supplies, maintenance, or necessary requirements. *See generally*

7

Compl. Beyond merely asserting that her "job duties were indistinguishable from those of direct employees of DFSS," Plaintiff has not described the requirements of the job, details of daily responsibilities or day-to-day activity, nor has Plaintiff alleged any information regarding any skills she was taught or any responsibilities she had to provide for the job or position she held. *See* Am. Compl. at ¶¶18-20 *compared to Knight.*, 950 F.2d at 378–79. There is nothing in the Complaint that supports the City controlling these two factors as to Plaintiff's role, in either the case manager role or site captain positions, that would support joint employer.

The fourth *Knight* factor, method and form of payment and benefits, also weighs against the City being a joint employer of the Plaintiff because again, Plaintiff has omitted any information related to her pay, compensation, or benefits. *See generally* Am. Compl. Thus, there is nothing in the Complaint to support that Plaintiff was paid for her work by the City, as opposed to Favorite. *Id.*.

The last factor, length of job commitment and/or expectations, is one of the most telling factors that Plaintiff was an independent contractor through Favorite, and not an employee of the City. *See Wells,* 94 F.4th at 616 (citing to *Est. of Suskovich v. Anthem Health Plans of VA. Inc.,* 553 F.3d 559, 567 (7th Cir. 2009) ("[W]here a person is engaged to work for a limited period of time … that fact favors independent contractor status.")). As stated by Plaintiff, her employment started in November 2022. Am. Compl. at ¶15. Plaintiff stopped working and went back to Texas approximately only three-months later in February 2023. *Id.* at ¶26. Plaintiff's work with Defendants resumed again in May 2023 until she was terminated on October 26, 2023, meaning Plaintiff worked at most for 6 months with Defendants. *Id.* at ¶26, 55. Most significantly, Plaintiff admits and affirms that her employment with the Defendants allowed her to renew her contract on a *monthly* basis, permitting her the *choice* if she wanted to continue to work or not. *Id.* at ¶25 (emphasis added). The short-term, inconsistent, and undefined time period Plaintiff was "scheduled" to be employed by the City weighs in favor of independent contractor, rather than an employee of the City.

8

As plead, Plaintiff has failed to sufficiently allege the City was her joint employer. Therefore, the City cannot be held liable to Plaintiff under Title VII as to any of her claims, and her Complaint should be dismissed with prejudice.[4]

## II. Plaintiff's sexual harassment claim fails.

Even if the Court were to find the Plaintiff pleaded the City was a joint employer, her sexual harassment claim nevertheless fails and must be dismissed.

### a. Plaintiff's sexual harassment claim must be dismissed because she failed to exhaust her administrative remedies.

Generally, a plaintiff cannot bring a Title VII claim that was not previously alleged in an Equal Employment Opportunities Commission ("EEOC") administrative charge. *See McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 903 (N.D. Ill. 2011)("Although failure to exhaust administrative remedies is an affirmative defense, when a plaintiff pleads facts showing that his claim is barred by that defense, it is appropriate to address it in the context of a motion to dismiss. In this case, . . . [t]he EEOC charge does not contain [the] discrimination claims pursuant to Title VII ... that [the plaintiff] now alleges in the complaint. . . . Therefore, the discrimination claims brought under Title VII . . . will be dismissed.") (internal citations omitted). In determining whether Title VII claims have been administratively exhausted, a district court asks whether claims are like or reasonably related to allegations of Equal Employment Opportunity Commission (EEOC) charge and growing out of such allegations or, put another way, whether there is reasonable relationship between allegations in charge and claims in complaint, and claims in complaint can reasonably be expected to grow out of EEOC investigation of allegations in charge. *Id.*

---

[4] "People who are not employed by the employer, such as independent contractors, are not covered by the anti-discrimination laws." *Deciding Who is Covered,* U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/employers/coverage-0 (last visited 6 May 2024). *See BankUnited, Nat'l Ass'n v. Giusti,* 2020 IL App (2d) 190522, ¶ 36, 171 N.E.3d 79, 89 ("Generally, courts may take judicial notice of facts that are commonly known or readily verifiable from sources of indisputable accuracy") (*citing to Murdy v. Edgar*, 103 Ill. 2d 384, 394, 83 Ill.Dec. 151, 469 N.E.2d 1085 (1984)).

Here, Plaintiff's Charge left blank the boxes for "discrimination based on" and "retaliation based on." *See* Am. Compl. at Exh. A and B. While Plaintiff's charge states that she was discriminated against "because of [her] sex, female", the only reference to harassment relates to retaliation, not sexual harassment - "I engaged in protected activity. Subsequently, I was subjected to harassment and denied training." *Id.* Courts have dismissed claims for failure to exhaust in similar circumstances. *See Renner v. Halex/Scott Fetzer Co.*, WL 1506547, at *6 (N.D. Ind. Apr. 14, 2010) (dismissing sexual harassment claim where the plaintiff's charge asserted that two supervisors leered at her and followed her to the bathroom where plaintiff explicitly stated that this conduct began *after* she complained about the sexual harassment of one of her co-workers, linking this conduct solely to her claim of retaliation).

As such, Plaintiff has not alleged sufficient facts to establish the requirement to exhaust her administrative remedies, as a sexual harassment claim could not grow out of the allegations in her charge, and this claim should be dismissed with prejudice.

    **b.** <u>Plaintiff fails to allege she was subjected to severe or pervasive harassment.</u>

Plaintiff summarily alleges that she was subjected to sexual harassment, but indicates only two remarks in support of this allegation: first, that colleagues at her same rank of site captain stated that she had "slept her way to the top"; and second, that an unidentified site captain told her that he "would make sure that she did not last in her position because she did not deserve the position." *See* Am. Compl. at ¶¶46, 49.[5] However, Plaintiff fails to identify when these remarks were made, where they were made, to whom they were made, or the context in which they were made.. Courts will *not* find a hostile work environment for a mere offensive utterance or conduct that does not interfere with the plaintiff's work performance. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). These stray comments alone do not meet the threshold for sexual harassment.

---

[5] While Plaintiff also alleges harassing conduct in the form of "lack of adequate communication and training", she only attributes this to retaliatory harassment and not part of her sexual harassment / sex-based harassment claim. *See* Am. Compl., and at ¶51-52.

The conduct "must . . . be so severe or pervasive as to alter the terms or conditions of the employment relationship." *Jackson v. Cnty. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007). To determine whether harassment is severe or pervasive, as required for hostile work environment under Title VII, court considers factors such as the severity of the allegedly discriminatory conduct, its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the employee's work performance. *Anderson v. St.*, 23-2765, 2024 WL 2966154 (7th Cir. June 13, 2024). Conduct that is "too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of sex" is insufficient to show a hostile work environment. *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir.1998). Off-color comments, isolated incidents, teasing, and other unpleasantries are not enough for a Title VII sexual harassment claim. *Anderson v. St.*, 23-2765, 2024 WL 2966154 (7th Cir. June 13, 2024).

Furthermore, courts have determined that "not everything that makes an employee unhappy is an actionable adverse action … [o]therwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 919-20 (1st Dist. 2010)(citing *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996)); *see also Baraona*, 2024 WL 1013968 at *13 ("not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because complaining employee belongs to a racial minority."); *McPherson v. City of Waukegan*, 379 F.3d 430, 434–35, 439 (7th Cir. 2004)(several sexually-suggestive comments along the lines of asking the colors of plaintiff's and others' bras and underwear did not alone establish hostile work environment); *Patt v. Family Health Systems, Inc.*, 280 F.3d 749, 751, 754 (7th Cir. 2002) (no actionable hostile work environment because of eight gender-based comments by then surgery department chief, when only two such comments were made directly to plaintiff and neither referred to her specifically); *Poullard v. McDonald*, 829 F.3d 844, 858–59 (7th Cir. 2016)(no actionable hostile work environment where primary allegations

11

concerned three incidents of supervisor harassment that had at best "a tenuously arguable connection to race"; the supervisor comments made "were at worst mild and ambiguous"); *Whittaker v. Northern Illinois University*, 424 F.3d 640, 644–45 (7th Cir. 2005)(no actionable hostile work environment where gender-based comments were made "outside [plaintiff's] presence, and there [was] no evidence that [plaintiff] was aware of these defendants' remarks during her tenure with [employer].").

Consequently, courts will dismiss hostile work environment claims where the alleged harassment was insufficiently severe as a matter of law. *See Brown v. Ferrara Candy Co.*, No. 22 CV 04875, 2023 WL 6519973, at *7 (N.D. Ill. Oct. 5, 2023)(citing *Boniface v. Westminster Place*, No. 18-CV-4596, 2019 WL 479995, at *3 (N.D. Ill. Feb. 7, 2019)(court dismissed hostile work environment where there were "no specific allegations suggesting that any conduct was physically threatening or verbally abusive or how it interfered with her work performance.")); *Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 991 (N.D. Ill. 2016)(dismissed hostile work environment where plaintiff merely "alleged that her co-workers and supervisors were mean to her and humiliated her.").

Here, Plaintiff alleges two isolated comments by colleagues, and makes no allegations that the comments had any effect on her work performance. *See generally* Am. Compl. at ¶¶40-52. Plaintiff also failed to allege conduct that was repeated, threatening or abusive. *See id.* Therefore, the isolated incidents, as alleged, are not enough to plead severe or pervasive conduct for a sexual harassment claim, and this claim should be dismissed on this basis.

### III. Plaintiff's Complaint fails to plausibly allege sex-based discrimination.

Assuming the Plaintiff could plead joint employer relationship with the City (she cannot), Plaintiff's sex-based discrimination claim is also insufficiently plead and must be dismissed. Plaintiff has failed to plausibly allege her termination (or any materially adverse employment action) was based on her gender. Failure to allege the protected class, sex, was the "but-for cause" of the discrimination, results in dismissal. *Hill v. Target Corp.,* No. 24 C 341, 2025 WL 919614, at *5 (N.D. Ill. Mar. 26,

2025)(dismissing Section 1981 race discrimination claim at pleadings because it was not alleged that race was the but-for cause of the discrimination and noting that Section 1981 does not protect against intention sex- based discrimination)(*citing to Arora v. Nav Consulting Inc.,* No. 21 C 4443, 2022 WL 7426211, at *2 (N.D. Ill. Oct. 13, 2022)(A plaintiff must initially plead that if not for the alleged discrimination based on their protected class, they would have suffered a legally protected right.)); *see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Even when a plaintiff can prevail under Title VII by merely alleging that sex was a "motivating factor" in the alleged discriminatory employment decision, Plaintiff has failed to do so here. *See* Civil Rights Act of 1991, § 107, 105 Stat. 1075, codified at 42 U.S.C. § 2000e–2(m).

While the pleading standard requires only the minimum of plaintiffs, here, Plaintiff's Complaint remains devoid of sufficient allegations to plead a claim for sex discrimination. *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008) ("to prevent dismissal under Rule 12(b)(6), a complaint alleging [employment] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his protected status]."). This District has maintained that the pleading standard for employment discrimination claims adheres to a minimal pleading standard which includes a plaintiff pleading they are in a protected category and was subjected to different terms and conditions based on their protected category. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (a plaintiff should explain "how she was aggrieved and what facts or circumstances lead her to believe her treatment was *because of* her membership in a protected class").

The only adverse action that Plaintiff alleges here is the non-renewal of her month-to-month contract on October 26, 2023.[6] She makes not references to who made the decision to terminate her

---

[6] While Plaintiff also claims she was "isolated by being left out of trainings or meetings," she alleges only that this conduct was in retaliation for being "involvement in Mr. Garza's termination," which is not due to a protected class.

13

contract, or any basis to support the conclusion that a decisionmaker held discriminatory animus against her, or that any similarly situated individuals outside of her protected class were treated more favorably.

Rather, Plaintiff relies on the sole allegation that the remark that she "slept her way to the top" by colleagues of her same rank to support a discrimination claim based on her sex. This is precisely the type of "stray comment" that does not support an inference of discrimination. *See* Compl. at ¶46; *compared to Kirley v. Bd. of Educ. of Maine Twp. High Sch. Dist. 207,* No. 13 C 1706, 2013 WL 6730885, at *8 (N.D. Ill. Dec. 20, 2013)((*citing to Petts v. Rockledge Furniture, LLC*, 534 F.3d 715, 721 (7th Cir.2008)("isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus.")(internal citation omitted)). Not only does a singular comment lack substantial support for a sex-discrimination claim, it also is not sufficient to infer discrimination when the pleading does not allege such discriminatory animus by the decision-maker. *Kirley,* 2013 WL 6730885, at *8 (quoting *Petts*, 534 F.3d at 721)("[a] remark can raise an inference of discrimination when it was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action[,]")). Applying Seventh Circuit precedent from *Petts* to *Kirley,* the Court dismissed Kirley's discrimination claims at the pleading stage for failure to allege the decision maker had any discriminatory animus or making of any comments about the plaintiff in regard to her protected class or in reference to the adverse employment action, but for the conclusion that she was discriminated against based on her [protected class]. *Id.* The Court found that such factually lacking and conclusory allegations in the complaint failed to "nudge[ ] [the plaintiff's] claim[ ] across the line from conceivable to plausible." *Id.* (citing to *Twombly*, 550 U.S. at 570); *see also Pillows v. Cook Cnty. Recorder of Deeds Off.*, No. 18 C 7497, 2019 WL 2524149, at *4 (N.D. Ill. June 18, 2019)( "well-established that a causal connection between protected activity and adverse employment action cannot be demonstrated by stray remarks made by non-

decisionmakers.")(quoting *Maxwell v. Cty. of Cook,* No. 10 CV 00320, 2011 WL 4639530, at *7 (N.D. Ill. Mar. 17, 2011)(additional internal citations and quotations omitted)).

Here, Plaintiff not only fails to allege facts to support she suffered any discrimination or adverse employment action because of her sex, female, her claim fails for the additional reason that the allegations do not support her termination, or any other presumed adverse action were taken with any specified discriminatory animus based on her sex by any decision-maker [*also because she fails to indicate who even made the decision of termination the non-renewal of her contract*]. *See generally* Am. Compl. As such, Plaintiff's Complaint does not support a sex-discrimination claim. See *Pillows,* 2019 WL 252149 at *4. As such, Plaintiff's sex discrimination claim is insufficiently plead and should be dismissed.

 **IV.** **Plaintiff's Title VII and IHRA Retaliation claims fails**

  **a.** Plaintiff has not sufficiently alleged that the non-renewal was caused by her alleged protected disclosure.

In order to state a claim for retaliation under Title VII, a plaintiff must allege that "(1) she engaged in a statutorily protected activity, (2) her employer took a materially adverse action against her, and (3) there was a causal connection between the two." *Malin v. Hospira, Inc.*, 762 F.3d 552, 558 (7th Cir. 2014); *Wilson v. Moss Holding*, 23 C 00091, 2025 WL 896982, at *4 (N.D. Ill. Mar. 24, 2025).[7] "A retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible." *Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 828 (7th Cir. 2014). "For an inference of causation to be drawn solely on the basis of a suspicious timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). Courts have rejected retaliation claims where a causal connection is supported

---

[7] Similarly, retaliation claims under the IHRA incorporate the standards for Title VII retaliation claims. *See Volling*, 840 F.3d at 382–83. Thus, the discussion of Plaintiff's Title VII claim applies equally to her IHRA claim.

15

solely by unexplained time gaps of more than two months. See *Benuzzi v. Board of Educ. of City of Chicago*, 647 F.3d 652, 666 (7th Cir. 2011) (2-month gap); *Marijan v. University of Chicago,* 2018 WL 3463272 at *5 (N.D. Ill. July 18, 2018) (19-month gap); *Wheeler v. Piazza*, 2018 WL 835353 at *4 (N.D. Ill. Feb. 13, 2018) (9-month gap); *Ghiles v. City of Chicago Heights*, 2016 WL 561897 at *2 (N.D. Ill. Feb. 12, 2016) (6-month gap).

Here, Plaintiff concludes her staff reported allegations of inappropriate sexual conduct by Mr. Garza to her, which were investigated and found to be true, around July 1, 2023, and Plaintiff issued a report about Mr. Garza. *See* Compl. at ¶38. Plaintiff then alleges she was treated differently and subjected to comments based on her sex, which she "emailed HR" about on August 2, 2023. *Id.* at ¶¶48-51, 35. Nearly two-months later, Plaintiff's contract was not renewed on October 26, 2023, which was almost four-months following her alleged report about Mr. Garza. *See id. generally.* This time gap is not sufficient to support causation of her termination as to her alleged protected activity, particularly given that Plaintiff was a contractor, whose contract was renewed a few times after she engaged in the alleged protected activity. Accordingly, these claims should be dismissed.

   b. <u>Plaintiff has not plausibly alleged that her non-renewal was related to protected activity</u>

Plaintiff's allegations that she "emailed HR" in August of 2023 without specifying which Defendant or what HR department she is referring to does not support that her termination was *because of* such reporting. It is axiomatic that protected activity must occur prior to alleged retaliation and decision makers must have knowledge of the protected activity at the time of the adverse employment decision. *See Mingo v. Roadway Express, Inc.*, 135 F. Supp. 2d 884, 903 (N.D. Ill. 2001)("A critical issue in determining whether there is a causal connection is 'whether the person who made the decision… was aware of the discrimination allegations at the time…' In fact, the Seventh Circuit has stated that absent such knowledge on the part of the decision-maker, a plaintiff lacks a causal link ….") (internal citations omitted).

16

Plaintiff's Complaint is bare of any allegation that whoever made the decision regarding the non-renewal of her contract was in fact aware of, let alone could have known, about her August 2023 reports, nor the report she generated regarding the allegations against Mr. Garza. *See generally* Am. Compl. at ¶¶36-38. Further, Plaintiff alleges that her termination occurred close in time to a complaint by shelter manager Andrea Saenz, who claimed Plaintiff was difficult to work with. *Id.* at ¶55-58. Plaintiff fails to set forth any facts sufficient to support a discriminatory or retaliatory inference as to Ms. Saenz's complaint. Therefore, Plaintiff's retaliation claims fail on this ground and must be dismissed.

      c. <u>Plaintiff has not sufficiently alleged retaliatory harassment</u>

To prove a retaliatory hostile work environment, a plaintiff must show that (1) her work environment was both objectively and subjectively offensive; (2) the harassment was in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Flanagan v. Office of Chief Judge of Circuit Court of Cook Cnty.*, 893 F.3d 372, 375 (7th Cir. 2018). At the pleading stage, a plaintiff must, though she need not use the specific terms, allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826 (7th Cir. 2015) For a retaliation claim, a materially adverse action is defined as an action "that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Lesiv v. Illinois Cent. R.R. Co.,* 39 F.4th 903, 911–12 (7th Cir. 2022)(internal citation omitted). The actions must rise above "trivial harms," such as "petty slights or minor annoyances that often take place at work and that all employees experience," which do not qualify as materially adverse. *Id.*

Here, Plaintiff's broad claims of being "isolated" by other Site Captains is insufficient as is the type of petty slight and annoyance that does not create a hostile work environment. Title VII "does

17

not set forth a general civility code for the American workplace" and it does not protect employees from normal petty slights, minor annoyances, or the simple lack of good manners. *Burlington Northern*, 548 U.S. at 68, 126 S.Ct. 2405. *See Diab v. Chicago Bd. of Educ.*, 850 F. Supp. 2d 899, 922 (N.D. Ill. 2012)(vague allegations about this isolation cannot amount to a materially adverse action). While the Seventh Circuit has acknowledged that it is possible for retaliatory ostracism by co-workers to rise to the level a materially adverse action if it is sufficiently severe, and the employer ordered it, or knew about it and failed to properly respond. *See Baker v. Henderson*, 215 F.3d 1329, 2000 WL 767846, at *7 (7th Cir.2000); *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir.2001); *Parkins v. Civil Constructors*, 163 F.3d 1027, 1039 (7th Cir.1998); *Knox v. State of Ind.*, 93 F.3d 1327, 1334 (7th Cir.1996). Plaintiff's complaint is devoid of any facts to allege she was subjected to ostracism that rises above a minor annoyance, and her claim for retaliatory harassment fails.

## V. **Plaintiff's Punitive Damages Request Must be Stricken.**

Plaintiff's request for relief in the form of punitive damages must be stricken. *See* Am. Compl. at p. 13. Plaintiff cannot recover punitive damages from the City on her Title VII claims. Municipalities are immune from punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Moreover, Illinois law prevents a local public entity from being "liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." 745 ILCS 10/2-102. Plaintiff requests punitive damages in her requested relief. *See* Am. Compl. at p. 13. As they are prevented by law, the City requests that this Court strike any request for punitive damages relief from Plaintiff's Complaint with prejudice.

## CONCLUSION

WHEREFORE, for the above reasons, the City respectfully requests this Honorable Court grant its Motion to Dismiss Plaintiff's Amended Complaint with prejudice.

**Dated: June 26, 2025**               City of Chicago, Office of the Corporation Counsel


                              BY: */s/ Emily R. Bammel*
                                   Emily R. Bammel
                                   Assistant Corporation Counsel

Emily R. Bammel, Assistant Corporation Counsel
Department of Law - Employment Litigation Division
2 N. LaSalle St., Suite 640
Chicago, Illinois 60602
312-744-3982
Emily.Bammel3@cityofchicago.org
Attorney No.: 6323600
**Counsel for Defendant City of Chicago**